HARRINGTON, ADMR., RESPONDENT, *v.* BUTTE MINER CO. ET AL., APPELLANTS.

(No. 3,349.)

(Submitted February 7, 1914. Decided February 27, 1914.)

[139 Pac. 451.]

*Libel—Instructions to Jury—Advisory Only—New Trial Order —Appeal.*

New Trial Order—When Upheld on Appeal.
1. The rule that an order granting a new trial will be upheld if it can be justified upon any ground of the motion is applicable only where the order is a general one, not disclosing the particular ground upon which the court acted, or to a case where the provisions of section 7118, Revised Codes, are invoked.

Instructions—Jury Must Obey—Exception.
2. In all cases, except libel, the jury are bound by the instructions of the court; a verdict in disregard of them will be set aside as against law.

Libel—Instructions—Advisory Only.
3. In an action for libel, the court's instructions, to the extent of determining whether the publication complained of is or is not libelous, are advisory only and may be disregarded by the jury; hence a general

verdict in favor of defendant, contrary to the directions of the trial court, was not a ground for granting a new trial.

[As to province of judge and jury in libel cases, see note in 13 Am. St. Rep. 625.]

*Appeal from District Court, Silver Bow County; John B. Mc-Clernan, Judge.*

Action by T. J. Harrington, as administrator of the estate of James Kelly, deceased, against the Butte Miner Company and J. Lawrence Dobell. From an order granting a new trial plaintiff appeals. Reversed.

*Messrs. George F. Shelton, Fred J. Furman, A. J. Verheyen,* and *M. P. Gilchrist,* for Appellants, submitted a brief; *Messrs. Furman* and *Gilchrist* argued the cause orally.

*Mr. D. M. Kelly, Mr. M. F. Canning* and *Mr. P. E. Geagan,* for Respondent, submitted a brief; *Mr. Canning* argued the cause orally.

It may be conceded with relation to Missouri that the doctrine in that state on the law of libel is somewhat peculiar, the decisions holding that the only question to be decided by a jury in that state is the question of "libel or no libel," all other questions being matters of law for the court. It is further conceded that the rule in Missouri is well established that in all cases, as pointed out by this court in *Paxton* v. *Woodward,* the jury are not bound by the instructions of the court, while, of course, in Montana the rule is the reverse. The questions of ownership, malice, privilege, publication and damage are held to be questions of law for the court in cases of libel in the state of Missouri, and as to new trials it is here held: "Our conclusion, then, is that the provision of our constitution does not deprive the courts of their power to grant new trials in a libel suit on the ground that the verdict is excessive, or for any other recognized legal ground." (*Cook* v. *Globe Printing Co.,* 227 Mo. 471, 127 S. W. 332.) And further, the court, notwithstanding the fact that it has held that the jury were the sole judges of the question

of libel or no libel, took upon itself to determine that question in several cases submitted to it.    (*Diener* v. *Star-Chronicle Pub. Co.*, 230 Mo. 613, 132 S. W. 1143; *St. James' Military Academy* v. *Gaiser*, 125 Mo. 517, 46 Am. St. Rep. 502, 28 L. R. A. 667, 28 S. W. 851.)    In support of their position counsel have also cited *Commercial Pub. Co.* v. *Smith*, 149 Fed. 704, 79 C. C. A. 410, and we fail to see how the ruling in that case helps appellants' position, for it was held that: "If its [the publication's] meaning is unambiguous, it is for the judge to say whether it is defamatory or not."    As opposed to the isolated rule in Missouri, we find it laid down: "Where the language of a publication is unambiguous and clearly libelous and no evidence to change its natural meaning is introduced, it is the right and duty of the court to instruct the jury that it is defamatory."    (*Pugh* v. *McCarty*, 44 Ga. 383; *Gabe* v. *McGinnis*, 68 Ind. 538; *Smith* v. *Stewart*, 41 Minn. 7, 42 N. W. 595; *Hunt* v. *Bennett*, 19 N. Y. 173; *Pittock* v. *O'Niell*, 63 Pa. 253, 3 Am. Rep. 544; *Gregory* v. *Atkins*, 42 Vt. 237; *Gottbehuet* v. *Hubachek*, 36 Wis. 515; *Arnold* v. *Ingram*, 151 Wis. 438, 138 N. W. 111; *Woolley* v. *Plaindealer Pub. Co.*, 47 Or. 619, 5 L. R. A. (n. s.) 498, 84 Pac. 473; *Moore* v. *Francis*, 121 N. Y. 199, 18 Am. St. Rep. 810, 8 L. R. A. 214, 23 N. E. 1127; *Childers* v. *San Jose Mercury*, 105 Cal. 284, 45 Am. St. Rep. 40, 38 Pac. 903; *Paxton* v. *Woodward*, 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 215; *McArthur* v. *State*, 41 Tex. Cr. 635, 57 S. W. 848; *Houston Printing Co.* v. *Moulden*, 15 Tex. Civ. 574, 41 S. W. 381; 13 Ency. of Pl. & Pr. 105.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Action for damages for libel.    Upon the trial of this cause, at the instance of the plaintiff, the court gave instruction No. 2 as follows: "You are instructed that the article complained of in this action is libelous in itself, and under the law and the evidence you should find for the plaintiff and against the defendants Butte Miner Company and J. Lawrence Dobell, and award

him such damages as in your judgment are just and fair under the circumstances.'' Notwithstanding this direction the jury returned a general verdict in favor of the company and Mr. Dobell. Plaintiff moved for a new trial upon three grounds: Insufficiency of the evidence, that the verdict is against law, and error in law occurring at the trial. The motion was sustained and a new trial granted in an order as follows: ''This day, the motion of the plaintiff for a new trial herein is by the court granted, solely and entirely upon the single ground presented to this court that the jury disregarded and refused to obey the instruction of the court to find a verdict for the plaintiff.'' The appeal is from that order.

Counsel for respondent in their brief suggest that the order should be upheld if it can be done upon any ground of the [1] motion. That rule, however, applies only to a case where the order is a general one, not disclosing the particular ground upon which the court acted, or to a case where counsel have invoked the provisions of the Act for the compensation of errors (sec. 7118, Rev. Codes). In this instance counsel did not except to the order of the trial court which in effect overruled their motion upon every other ground save the one designated in the order. But assuming counsel's position to be correct, they do not indicate to us any error in the record claimed by them to be prejudicial to the plaintiff, other than the one upon which the trial court acted, and they cannot expect the members of this court to go through a record of more than 500 pages in a microscopic search for some error which they do not suggest exists there.

The one question before us is: Were the jurors bound by the trial court's instruction No. 2? In *Murray* v. *Heinze,* 17 Mont. 353, 42 Pac. 1057, this court held that in all cases, [2] *except libel,* the jury are bound by the instructions of the court, and a verdict in disregard of them will be set aside as against law. That decision has been affirmed repeatedly, and if in any given instance the exception noted above has been omitted in the statement of the rule, it was mere oversight. There

has never been any intention on the part of the court to modify the rule as there expressed; so that in the investigation of the question before us we are not embarrassed by any conflicting statements heretofore made by this court; indeed, the question has never been presented directly before this. In *Paxton* v. *Woodward,* 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 215, it was suggested but decision was reserved, as the question was not so directly involved that its determination was necessary to the proper disposition of the appeals in that case.

Section 10, Article III of the Constitution of Montana, contains this provision: "In all suits and prosecutions for libel, the truth thereof may be given in evidence; and the jury, under the direction of the court, shall determine the law and the facts." In its general scope it is not new to the law. Prior to 1792, the law of libel in England was in an unsatisfactory, if not uncertain, state, and for the purpose of setting at rest all questions as to the province of the jury in the trial of a libel case, the Parliament passed what is known as the Fox Libel Act, entitled "An Act to remove Doubts respecting the Functions of Juries in Cases of Libel" (32 Geo. III, Ch. 60). The Act was by its terms made applicable only to criminal libels. It provides that the trial court shall give the jury instructions as in other criminal cases, but that the jurors may determine for themselves the question of libel or no libel. The Act will be found in its entirety in Odgers on Libel and Slander, second edition, page 710.

In *Capital etc. Bank* v. *Henty,* L. R. 7 App. Cas. 741, the Judicial Committee of the Privy Council, considering the effect of the Fox Act upon the practice in England, said: "Since Fox's Act at least, however the law may have been before, the prosecutor or plaintiff must also satisfy a jury that the words are such, and so published, as to convey the libelous imputation. If the defendant can get either the court or the jury to be in his favor, he succeeds. The prosecutor, or plaintiff, cannot succeed unless he gets both the court and the jury to decide for him."

In Odgers on Libel and Slander, second edition, page 604, the proceeding in the trial of a criminal libel after the enactment

of the Fox Act is tersely stated as follows: "The judge, of course, may still direct the jury on any point of law, stating his own opinion thereon, if he thinks fit; but the question of libel or no libel must ultimately be decided by the jury."

Commenting upon the practice in England before the passage of the Fox Act, under which the courts reserved to themselves the right to determine the question of libel or no libel, Judge Cooley in his Principles of Constitutional Law, 281, says: "This doctrine was overruled by statute in England, and the jury are now permitted to judge of the whole case, and to decide, not merely upon the responsibility of the publication, but upon the animus with which it was made, and whether within the rules of law the publication is libelous. The instructions of the judge upon the law become under this rule advisory merely, and the jury may disregard them if their judgment is not convinced."

That these authorities correctly interpret the statutory law of libel in England would seem to be beyond controversy.

Early in the history of this country, like provisions, applicable only to criminal prosecutions for libel, were enacted. Most of them have found expression in state Constitutions. For instance, in Alabama the Constitution (Art. I, sec. 13) provides "that in all indictments for libel the jury shall have the right to determine the law and the facts under the direction of the court"; and a like provision is found in Arkansas, California, Connecticut, Delaware, Kentucky, Maine, Michigan, Mississippi, New Jersey, New York, North Dakota, Pennsylvania, South Carolina, Tennessee, Texas and Wisconsin, and in the statute law of Iowa and Kansas. In every instance, however, it is limited to criminal libels.

Upon the question before us it is idle to cite cases from states which have no provision of Constitution or law respecting the functions of a jury in the trial of a libel case. In the absence of any such provision, the general rule that the court's instructions are binding upon the jury would prevail (*Gregory* v. *Atkins,* 42 Vt. 237); and this would be the rule also in the trial

of civil cases for libel in the states enumerated above, where the provision is limited to criminal libels. But a decision from any one of those states in a criminal prosecution is a precedent and valuable, to the extent that the reasoning of the court appeals to us and indicates the general view as to the purpose of a provision of this character.

The Constitution of California provides: "In all criminal prosecutions for libels * * * the jury shall have the right to determine the law and the fact." In *People* v. *Seeley,* 139 Cal. 118, 72 Pac. 834, the court said: "The provision in the Constitution is contained in nearly all the state Constitutions. The occasion for such provision was that in the early rulings of the courts the jury were required to confine their attention to the facts, and the court determined conclusively the libelous or innocent character of the publication. This doctrine was long ago overruled in England, and the jury are now permitted to judge of the whole case, and to decide not only as to the fact of publication, but upon the animus with which it was made, and whether, within the rules of law, the publication is libelous. The judge has the right to instruct the jury, but his instructions are advisory only. The jury could disregard the instructions, and bring in a verdict even contrary to the evidence. They are the sole judges of the law as well as of the fact."

In *State* v. *Heacock,* 106 Iowa, 191, 76 N. W. 654, after referring to the section of the Iowa Code conferring upon juries in criminal libel cases the power to determine the law as well as the facts; it is said: "But the legal right of a jury, in a criminal prosecution under the sections quoted, to determine the law which should govern the verdict, even though a decision in conflict with the charge of the court be reached, cannot be doubted. The sections gave to the jury in such cases not merely the power, but the right, to make such a decision, and the jury was not required to follow the charge of the court, which must be regarded as advisory, and not conclusive as to the duty of the jury."

In Pennsylvania the constitutional provision applicable to criminal libels reads: "In all indictments for libels the jury

shall have the right to determine the law and the facts, under the direction of the court, as in other cases." In *Pittock* v. *O'Niell*, 63 Pa. 253, 3 Am. Rep. 544, the court, after quoting the provision above, said: "There can be no doubt that both in criminal and civil cases the court may express to the jury their opinion as to whether the publication is libelous. The difference is, that in criminal cases they are not bound to do so, and if they do, their opinion is not binding on the jury, who may give a general verdict in opposition to it, and if that verdict is for the defendant, a new trial cannot be granted against his consent. As our declaration of rights succinctly expresses it, the jury have the right to determine the law and the facts in indictments for libel as in other cases."

In Kansas it is provided by statute that in all indictments or prosecutions for libel the jury shall have the right to determine the law and the facts; and in *State* v. *Verry*, 36 Kan. 416, 13 Pac. 838, it is said: "Of course, the court is not to abdicate its power and duty of instructing the jury upon the law of the case. The charge should be as full and complete as in cases where the jury are to implicitly take and follow the law laid down by the court. By reason of the learning and experience of the judge who presides, as well as the authority with which he is invested, the jury will doubtless heed and highly regard his opinion, as they should do, and will incline to adopt it rather than a contrary view presented by counsel; but the instructions which he gives are only advisory, and the jury are not in duty bound to accept and follow his views."

The foregoing are in harmony with the English cases and indicate very clearly the purpose of the rule and the power intended to be conferred by it upon juries, in criminal prosecutions for libel. In the Constitution of each of the following states, Colorado, Missouri, South Dakota and Wyoming, is a provision similar to that quoted above from our own Constitution, which applies to all libel cases, civil as well as criminal. In *Ross* v. *Ward*, 14 S. D. 240, 86 Am. St. Rep. 746, 85 N. W. 182, the trial court had directed a verdict for plaintiff, leaving to the jury

only the question of the amount of damages. After referring to the authority conferred upon the jury in the trial of a libel case, either civil or criminal, the court said: "The fact that the jury shall have the right to determine the fact and the law under the direction of the court seems to have been overlooked by the learned circuit court. The court, it is true, may direct the jury by stating to them what constitutes a privileged communication as laid down in the law, but whether or not the communication is privileged is a matter to be determined by the jury. The provision of the South Dakota Constitution is self-executing. To the lawyer familiar with the early decisions of the English courts upon the subject of libel and slander, the importance of this provision will be apparent. In our view of the case, therefore, the court has no right to take from the jury the question of whether or not the communication in this case was privileged."

Under a constitutional provision identical with our own, the Missouri courts have held consistently that the question of libel or no libel is for the jury; that it is the province of the trial court to advise the jury, but that the jury are not bound by the instructions so far as the question of libel or no libel is concerned, and that a general verdict for a defendant concludes the case. (*Duncan* v. *Williams,* 107 Mo. App. 539, 81 S. W. 1175; *Sands* v. *Marquardt,* 113 Mo. App. 490, 87 S. W. 1011; *Arnold* v. *Jewett,* 125 Mo. 241, 28 S. W. 614; *Heller* v. *Pulitzer Pub. Co.,* 153 Mo. 205, 54 S. W. 457; *Ukman* v. *Daily Record Co.,* 189 Mo. 378, 88 S. W. 60.)

The question has not been before the supreme court of Colorado directly, so far as our investigation discloses. In *Hazy* v. *Woitke,* 23 Colo. 556, 48 Pac. 1048, an order of the trial court granting a nonsuit was reversed and some observations, by way of *dictum,* upon the power of the court in libel cases, are made, but nothing is said which is out of harmony with the declarations of any of the courts referred to above.

The question does not appear to have been considered by the Wyoming court; and we have not found any authority contrary to the views expressed above from any state having a constitu-

tional or statutory provision conferring upon juries in libel cases the power to determine the law as well as the facts. The authorities cited are entitled to respectful consideration from us. But even if there were not any authorities upon the subject, we would be compelled to the same conclusion as they express; for any other decision of the question would render the language of our Constitution meaningless. It was unnecessary for the framers of our Constitution to make any declaration upon the subject at all, if it was intended that the court's instructions as to the libelous character of a publication should be binding upon the jury, for that would be the rule in the absence of any declaration. [3] The history of these peculiar provisions, which make the trial of a libel case *sui generis,* discloses beyond all controversy that the purpose of their enactment has always been to confer upon juries a power not otherwise available to them, and that to the extent of determining whether a particular publication is or is not libelous, the court's instructions shall be advisory only and may be disregarded by the jury. Except as to the question of libel or no libel, the authority of the trial court has not been curtailed and in every other respect the trial of a libel case proceeds as any other.

It follows that the jury in this instance were not bound by instruction No. 2; that a decision contrary to that instruction is not a decision contrary to law, but under the Constitution is very clearly a verdict according to law as determined by the jury. The refusal of the jury to follow the advice of the court in this instance was not a ground for granting a new trial. In the absence of any prejudicial errors occurring at the trial, the general verdict in favor of defendants should have concluded this case.

The order granting a new trial is reversed.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.