HORACE M. GRAY *vs.* NATHAN ALBERT MOSSMAN.

Third Judicial District, New Haven, January Term, 1917.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Without a certification of the evidence, this court is unable to determine whether or not a verdict was properly directed. No finding, however, in addition to the evidence, is required to determine that particular question. If rulings upon evidence are also included in the appeal, a finding should usually be made for their proper presentation; though cases may occur in which excerpts from the transcript of the evidence, in connection with the admissions found in the record, are sufficient for an understanding of the rulings without any other or further statement.

Until modified by this court, its opinion upon a former trial of the cause is the law of the case, equally obligatory upon the parties and upon the trial court.

Consent of counsel to a statement of the issues by the judge at the

Gray *v.* Mossman.

opening of the trial, is a waiver of any right either party may have had to have the pleadings read to the jury.

The disclosure of a difference between the statement of the issues when directing a verdict and the statement of them made at the opening of the trial, has no relevancy to the question whether the court was correct or not in directing a verdict.

There is no reason for offering in evidence an alleged libelous writing which the defendant admits having written and published.

The roster of a military company which names a second lieutenant but makes no reference to a first, tends to prove a vacancy in the latter office.

When there is no evidence to prove the falsity or malice of an alleged libel, and a verdict for the defendant is directed upon that ground, the exclusion of evidence offered to prove some other issue, although erroneous, is harmless.

The exclusion of questions put to witnesses as military experts, upon the ground that they were not qualified to testify as such, will not be held erroneous, unless the record discloses that the court exceeded its discretion in so ruling.

The exclusion of evidence to prove the meaning of words of which the court takes judicial notice, is harmless.

One cannot testify to another's intent in issuing a writing alleged to be libelous, but must confine himself to the latter's acts and declarations, and let the jury pass upon his intent.

A fact appearing in an official record cannot be proved by hearsay.

Rulings which were not objected to, or, if so, were not pressed to exception, should not be assigned as grounds of error.

Evidence from a witness who is subsequently shown to have had no competent knowledge of the subject, is properly stricken out.

A qualified military expert may testify as to whether certain assumed military conduct of a party to the action on a given occasion, would have been proper or otherwise.

The question whether a subordinate officer is qualified by personality or otherwise for advancement, and what effect his promotion would have upon his company, are subjects upon which military experts are necessarily most competent to speak. The facts assumed in the question put to such an expert may, however, be challenged, and the motive of the defendant in the course pursued by him may be shown.

In the present case the plaintiff sought to show who had secured his brother's discharge from the company. The record failed to disclose the purpose of the offer, the ground of the objection, or the basis of the ruling excluding the evidence. *Held* that so far as appeared the offer was immaterial and the ruling neither erroneous nor harmful.

A commission of the Governor of the State appointing one as captain

Gray *v.* Mossman.

is admissible in evidence as prima facie proof, at least, that all of the statute requirements respecting his nomination and election have been observed, and that the appointee is a *de jure* officer.

Oral evidence of a practice was admitted against the plaintiff's objection, but it subsequently appeared that such practice conformed to the military regulations, a copy of which was put in evidence by the defendant. *Held* that the ruling, if questionable, was harmless.

In an action for libel the defendant may testify to the motive or feeling which prompted his conduct, that being a fact in issue.

In the present case the defendant, a captain in the National Guard, in response to a request from his superior officer, expressed in writing his opinion that the plaintiff, a sergeant in the same company, had such "an unfortunate personality" that his promotion would grievously affect the company; and this statement was the basis for the plaintiff's action for libel. Upon his direct examination the defendant was asked in what way he noticed any change in the attitude and demeanor of the plaintiff, and answered that the plaintiff had acquired by study a thorough knowledge of the regulations and that "this made him feel that he knew more than any of us." *Held* that the inquiry appeared to be relevant and material and the answer responsive thereto.

Evidence that after the plaintiff's discharge from the service he had preferred and pressed charges against the defendant before the military authorities, while not material to the issues of the truth of the alleged libelous charge or the malice of the defendant, and therefore harmless respecting them, was nevertheless admissible as showing the plaintiff's attitude and state of mind toward the defendant, and as characteristic of his whole conduct.

An attempt by the plaintiff upon the cross-examination of one of the witnesses for the defendant, to go into the details of an interview which he, the plaintiff, had had with the witness, was excluded by the trial court. *Held* that so far as appeared from the finding this interview had not been touched on the direct examination, nor did it appear that the inquiries excluded concerned relevant and material evidence, or that their exclusion was harmful to the plaintiff.

While the Seventh Amendment to the Constitution of the United States preserves the right of trial by jury in actions brought in the Federal courts, neither it nor the Fourteenth Amendment affect the power or control the proceedings of State courts over jury trials.

The right to direct verdicts is one recognized and practiced by the Federal courts.

The provision in the Constitution of this State (Art. I, § 7), that "in all prosecutions or indictments for libel, the truth may be given in evidence, and the jury shall have the right to determine the law and the facts, under the direction of the court,"—does not apply

to civil cases, and therefore does not prevent the direction of a verdict in a civil action for libel.

A verdict may properly be directed in a civil action where but one conclusion is reasonably open to the jury.

Argued January 18th—decided February 21st, 1917.

ACTION to recover damages for an alleged libelous publication, brought to the Superior Court in Fairfield County and tried to the jury before *Gager, J.;* at the direction of the court, the jury returned a verdict for the defendant, which the court refused to set aside on motion of the plaintiff, and from the judgment thereafter rendered he appealed. *No error.*

*Joseph A. Gray,* for the appellant (plaintiff).

*Homer S. Cummings,* with whom was *Raymond E. Hackett,* for the appellee (defendant).

WHEELER, J. This case was before us in 1914 (88 Conn. 247, 90 Atl. 938), on an appeal from a decision setting aside a verdict. We then held that assuming the words used were actionable *per se,* the evidence disclosed that they were true; and if false, that they were published in the exercise of a military privilege and belonged to the class known as privileged communications, for the publication of which the defendant could not be held liable unless the proof showed that he was actuated by malice. The conclusion of malice, we held, could not be reasonably reached upon the evidence.

On the present trial the court directed a verdict, and the appeal herein is from this decision.

The basis of the decision was that the communication was privileged, and meant that the plaintiff was temperamentally unfitted for command; and that there was

no evidence which showed "either that that was not true, or that the defendant did not, upon reasonable grounds, honestly believe that it was true. And there is no evidence whatever, as I think in this case, any more than in the other case, as the Supreme Court said, to show that the defendant was actuated by any feeling of ill will, that he made that endorsement under any other considerations than in the reasonable and ordinary conduct of his duty in reporting to his superior officer the reason why he had not made the promotion that the plaintiff desired."

The evidence is not before us, and so we have no way of determining whether these conclusions, or the direction of the verdict, were supported by the evidence.

Criticism is directed at the court's action in regarding the former opinion of this court. Until modified by us it was, so far as it went, the law of the case, equally obligatory upon the parties to the action and upon the trial court.

The motion to correct is pressed in four particulars. The plaintiff desires a finding that the pleadings were not read at the opening of the trial, but by consent of counsel the court made a brief statement of the issues involved. The consent of counsel was a waiver of any right he may have had to have the pleadings read. If the purpose of the motion is to disclose a difference between the issues as stated in the direction of the verdict and those at the opening of the trial, of which we have no knowledge, this would not affect the correctness of the court's direction of the verdict.

The plaintiff desires noted the fact that he offered in evidence the alleged libelous writing and evidence tending to prove all the allegations of the complaint. The defendant admitted the making and publication of the alleged libel and there was no occasion to offer it in evidence.

The court made no finding except its statement of the rulings on evidence. On the former appeal from the denial of a motion to set aside a verdict, we said no finding was required in that case, and that is true on an appeal from a directed verdict when the determining issue is decided by a review of the evidence. On such appeals consideration of the evidence, and not of the finding, will determine the correctness of the ruling appealed from. On an appeal from a directed verdict, where rulings on evidence are taken up, in the ordinary case a finding of the facts is necessary to an understanding of the rulings on evidence, and should be made; cases may occur where the rulings on evidence may be considered upon a sufficient excerpt from the transcript of the evidence in connection with the admissions in the record, without such a finding.

In this case the plaintiff did not request such a finding, and is in no position now to claim it; moreover, the rulings on evidence, although not stated as fully as would be desirable, are, as a rule, stated as contained in the plaintiff's request, and can be sufficiently understood to permit us to rule upon the various exceptions without having the aid of such a finding. Rulings upon evidence which merely are excerpts from the transcript surrounding the ruling made, not infrequently do not put the appellate court in the position of the trial court. Where the excerpts of the evidence do not do this, the ruling should contain a brief statement showing the situation under which the ruling was made.

The other grounds of the motion to correct are covered by the addition to the finding made.

Certain exceptions affecting seven of the rulings on evidence are pressed as embodying statements contrary to the evidence. The excerpts from the evidence do not support this claim. Without the entire evidence before us, or all that related to these subjects, we could

not rule decisively upon these exceptions. Conceding that these statements were wrongly incorporated in the finding, we would be unable to conclude that this was harmful to the plaintiff.

The rulings upon evidence are numerous, but in the main unimportant. The roster (exception 1) of the military company was offered to prove that there was a vacancy in the office of first lieutenant. The roster named the second lieutenant and omitted reference to the first. This would, it seems to us, have tended to prove the vacancy claimed, and the existence of the vacancy appears to have been an issue in the case. As it did not tend to prove, so far as the record shows, the falsity of the alleged libel, or malice, its exclusion was harmless. For the direction of the verdict was practically upon the ground that the evidence was substantially similar to that of the former trial, and that no evidence of the falsity or bad faith of the charge, or of its malice, had been adduced upon the present trial. This ruling was stated in the finding as the plaintiff's counsel stated it in his draft-finding.

The second ground upon which the roster was claimed, was that the plaintiff might prove which of these members had given him assurance of voting for him to fill this vacancy. This was wholly immaterial to the issues raised by the pleadings.

The plaintiff was not permitted to answer the question (exception 2) as to whether a sergeant should have had the confidence of the officers of the company, through want of military qualification. For like reason the expert question asked of the witness Nash, and forming the subject of the 15th exception, was excluded. The record does not show that the court exceeded its discretion in ruling that these witnesses were not qualified to testify as military experts.

Definitions (exception 3) from the dictionary of the

terms used in the libel were excluded because not terms of science; but the court ruled that the matter was one for judicial notice which might be taken advantage of in argument. No harm would have been done to have admitted these definitions, and no harm has been done by their exclusion. The court took judicial notice of them, as we do. And in our judgment they do not tend to prove the meaning attributed to the alleged libel by the plaintiff, nor to prove malice.

To prove malice the plaintiff (exception 4) was asked if he knew the intent of the defendant in issuing the endorsement, which is the libel charged. This was properly excluded. It invited an answer based upon the witness' inferences or his judgment based upon any form of information, hearsay or otherwise. The court ruled that all that the defendant did or said relevant to the matter might be shown; from this and the rest of the evidence it was for the jury to ascertain the intent.

The plaintiff's testimony (exception 5) was stricken out, that a Colonel Schultze had told him in the presence of the defendant that the same statement appearing in this endorsement was made in Hartford to obtain the plaintiff's discharge. The plaintiff claimed this as proof of a fact appearing in the military records and showing a repetition of the libel by the defendant. A fact appearing in an official record cannot be proved by hearsay. We do not consider any other claim for the admissibility of this evidence, for none such was made in the trial court or there ruled upon.

Exceptions 6, 8 and 22 are instances where either no objection was made, or objections made were not persisted in or pressed to exception. These exceptions ought not to have been incorporated in the appeal.

The plaintiff (exception 7) testified to the defendant's wealth. It subsequently appeared that this was

a mere estimate based upon his knowledge that the defendant had received certain moneys from some estates some years before. The witness possessed no competent knowledge from which he could testify, and the court properly struck this out.     .

Upon an assumed set of facts (exception 9) purporting to detail an interview between the plaintiff and defendant, in which the defendant said that he did not intend to call a meeting of the military company for the election of a second lieutenant, and intended to appoint to the position of second sergeant another than the plaintiff, and the plaintiff said to the defendant, his captain, "If you adopt the course you have stated, and do not call an election, I will call for a court martial on you," a qualified witness was asked: "Would that be in accordance with the proper conduct of a sergeant to his captain?" Objection was taken because the question affected the personality of the plaintiff and hence his character, and such evidence could not be proved by specific instances, and because the matter was one of fact for the jury, and not the subject of a hypothetical question.

The proper military conduct of the plaintiff upon a given occasion was an issue, and only a military expert could testify as to that: the other objection does not appear to be involved.

Exceptions 10, 11 and 12 all concern the admission of expert questions asked of a military expert, and were undoubtedly competent.

The defendant's counsel inquired of a qualified expert (exception 13): Suppose the colonel of a regiment to which a captain belonged who had been spoken to as above by one of his sergeants, should refer to the captain for his endorsement a communication from the father of the sergeant relative to the treatment of his son, the sergeant, by the captain, in regard to his ad-

vancement, and suggesting the probability of a court martial if the captain is permitted to appoint another than the son a fourth sergeant, and the captain should make this endorsement: "Respectfully forwarded to the adjutant C. A. C. with the explanation that Sergeant ————, is an unusually bright, clever man, but has such an unfortunate personality that if he advanced higher the company would suffer grievously," would such an endorsement be justified? What qualifications and what personality are essential and desirable in a military officer are largely subjects upon which qualified military men are necessarily most competent to speak. And whether a sergeant is qualified for advancement, and what effect his advancement would have upon a military company, are subjects for military experts. The facts assumed may be questioned, and the motive of the captain in the course taken may be shown. The objections taken were not these, but were that the question was one of fact for the jury, and not of technical knowledge, and that the character of the plaintiff could not be attacked in this way. These objections were not well taken.

The same qualified witness was inquired of (exception 14): "If he [the captain] made a report such as I have read to you [an official report made by the captain in the course of his duty], would he be justified in making that kind of a report if the conduct had been as I have outlined in my question heretofore?" This is the conduct detailed in the interview in the objection last considered. A similar objection was made and properly overruled for the reasons already given. For like reasons the evidence covered by exception 27 was properly admitted.

The plaintiff attempted (exception 16) to prove who obtained his brother's discharge from this company. The record does not show the purpose of the offer, the

basis of the objection, or the ground of the ruling ex-
cluding it. On the record the offer appears to have been
immaterial, and we cannot find that it was erroneous
or harmful.

The defendant offered in evidence (exception 17) a
commission from the Governor of the State appointing
him a captain for the purpose of proving that he was a
*de jure* captain. The plaintiff objected, because the
election of the captain had not been first proved, and
also because the commission was issued to Albert Moss-
man, while the defendant's name was Nathan Albert
Mossman. The court overruled the objection, stating
that these named persons were one and the same. The
commission could only be legally issued by the Governor
as commander-in-chief, upon finding that the statutory
requirements as to nomination and election had been
met, and at the least it was prima facie proof that all
of the statute requirements had been observed. If the
person named in the commission was the defendant,
the objection of a variance in names was not well taken.
The commission was properly admitted.

The defendant, on his direct examination, was asked
as to the practice with reference to the designation of
sergeants to perform their various duties (exception 18).
The plaintiff objected because the best evidence was the
military regulations. The witness answered, and then
defendant's counsel laid in the regulations covering this
matter. If the ruling were questionable no harm was
done, for the regulations did not differ from the practice
upon this point.

The defendant (exception 19) testified that he told
the plaintiff that the first sergeant had placed him in the
lower position, and he would inquire of the Colonel if
there was any change in his status, and that upon the
Colonel's saying no, the defendant ordered Sergeant
Gray placed in his former position. The defendant was

then asked: "Was your action in that matter such as you took, prompted by any feeling of malice against Sergeant Gray?" This was admitted over plaintiff's objection. The motive or feeling with which the defendant had conducted himself was in issue, and the defendant had the right to testify to this as a fact.

The defendant (exception 20) was permitted to inquire, over plaintiff's objection, in what way he noticed any change in the attitude and demeanor of the plaintiff. He replied that the plaintiff had by studying the books obtained a thorough knowledge of the regulations, and "this had made him feel that he knew more than any of us." The question appears to have been relevant and material, and the answer was responsive and not objected to.

Exceptions 23 and 24 are other instances where the defendant was properly permitted to testify that he had no malice or any unworthy motive toward the plaintiff in giving a military order, or in his conduct toward the plaintiff. Exception 25 covers a similar question as to the motive with which the defendant made the endorsement, and whether it represented his honest opinion. It was admitted over the plaintiff's objection. Such evidence is common in libel actions; at times it is the only effective way a charge of malice can be met and good faith sustained.

Evidence (exception 26) was admitted over plaintiff's objection that after the plaintiff had been discharged from the service he had filed and pressed charges with the military authorities against the defendant. This evidence was not material to the issues of the falsity of the charge, or the malice of the defendant, and hence it could do no harm. The plaintiff having testified and his conduct toward his captain being before the jury, it was impossible to keep this out. It exhibited

the plaintiff's attitude and state of mind toward defendant and characterized his whole conduct.

Upon plaintiff's cross-examination (exception 29) of Colonel Fitch, the plaintiff attempted to go into the details of an interview he had had with the Colonel. So far as appears from the finding, this interview had not been developed on the direct examination, and there is nothing in the finding to show that the inquiries concerned relevant and material evidence, or that its exclusion was harmful. Had the additional facts appearing in exception 29 of the draft-finding been made a part of the finding by the court, or on the motion to correct, we should have inclined to a different conclusion.

The final assignment of error is the claim that the direction of the verdict was in violation of § 1 of Article Fourteen, and of Article Seven, of the Amendments to the Constitution of the United States, and of §§ 7, 12 and 21 of Article First of the Constitution of Connecticut.

Article Seven of the Amendments to the United States Constitution preserves the right of trial by jury in actions brought in the United States courts; it does not limit the power, or control the proceedings, of the State courts. *Colt* v. *Eves*, 12 Conn. 242. The Federal courts recognize the right of their courts to direct verdicts. *Sparf and Hansen* v. *United States*, 156 U. S. 51, 102, 15 Sup. Ct. 273; *Coughran* v. *Bigelow*, 164 U. S. 301, 308, 17 Sup. Ct. 117. The Fourteenth Amendment was not intended to, and does not, affect the power or proceedings of State courts over jury trials.

Article First, § 7, of the Constitution of Connecticut, provides: "In all prosecutions or indictments for libels, the truth may be given in evidence, and the jury shall have the right to determine the law and the facts, under the direction of the court." This provision, the plain-

tiff contends, makes the jury the judges of the law, and prevents the direction of a verdict in this action of libel. Section 7 of Article First applies to criminal, and not to civil, causes. The terms of this section, "prosecutions or indictments," relate to criminal causes, and neither has the meaning of suit or action. It follows the language of Fox's Libel Act of 1792 (32 Geo. III, Chap. 60), whose object was to restore to juries "the same power . . . in prosecutions for libel that they had in other criminal prosecutions." The Act was by its terms and by the interpretation put upon it by the English courts "made applicable only to criminal libels." *Rex* v. *Burdett*, 4 Barn. & Ald. 95, 131, 6 Eng. C. L. R. 404, 420. A large number of States in our early history passed Acts similar to our Act, and, as is pointed out in *Harrington* v. *Butte Miner Co.*, 48 Mont. 550, 555, 139 Pac. 451, 51 L. R. A. (N. S.) 369, in every instance the Act is limited to criminal libels. In other States, of which Colorado and Missouri are examples, the benefit conferred has by the terms of their constitutional provision been extended to all suits and prosecutions, and hence has been made applicable alike to civil as to criminal causes.

When the jury can reasonably reach but one verdict, the court in a civil case may direct the verdict. General Statutes, § 753; *Whitney* v. *Brooklyn*, 5 Conn. 405, 416; *Fay* v. *Hartford & Springfield Street Ry. Co.*, 81 Conn. 578, 579, 71 Atl. 734.

We must assume that the trial court directed this verdict in conformity with our practice; since we have not the evidence before us we are unable to test this ruling. There is no error.

In this opinion the other judges concurred.